## Melrose Assoc. L.P. v Floral Assoc. L.P.

2024 NY Slip Op 31933(U)

June 4, 2024

Supreme Court, New York County

Docket Number: Index No. 651323/2020

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

---------------------------------------------------------------------------------X

MELROSE ASSOCIATES LIMITED PARTNERSHIP,

|  |  |
|---|---|
| **INDEX NO.** | 651323/2020 |

Plaintiff,

|  |  |
|---|---|
| **MOTION DATE** | 02/02/2024, 01/26/2024 |

- v -

FLORAL ASSOCIATES LIMITED PARTNERSHIP,
JOSEPH T CEFALO, FREDERICK W CEFALO, STEPHEN
R CEFALO, ESMC, LLC,

|  |  |
|---|---|
| **MOTION SEQ. NO.** | 012 013 |

Defendant.

**DECISION + ORDER ON MOTION**

---------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 012) 307, 308, 309, 310, 311, 312, 313, 314, 315, 316, 317, 318, 319, 320, 321, 322, 323, 324, 325, 326, 327, 328, 329, 330, 331, 332, 333, 334, 335, 336, 337, 338, 371, 372, 383

were read on this motion to/for          JUDGMENT - SUMMARY          .

The following e-filed documents, listed by NYSCEF document number (Motion 013) 339, 340, 341, 342, 343, 344, 345, 346, 347, 348, 349, 350, 351, 352, 353, 354, 355, 356, 357, 358, 359, 360, 361, 362, 363, 364, 365, 366, 367, 368, 373, 374, 375, 376, 377, 378, 379, 380, 381, 382

were read on this motion to/for        SUMMARY JUDGMENT(AFTER JOINDER       .

Upon the foregoing documents and for the reasons set forth on the record (*tr*. 5.30.24), Melrose

Associates Limited Partnership's motion for summary judgment (Mtn. Seq. No. 013) and the

defendants' motion for partial summary judgment (Mtn. Seq. No. 012) are each granted solely to

the extent set forth below.

Reference is made to a certain Amended and Restated Limited Partnership Agreement (the **LP**

**Agreement;** NYSCEF 347), dated March 8, 1983, by and between, among others, Floral

Associates Limited Partnership (**Floral**), the defendants Joseph T. Cefalo, Federick W. Cefalo,

and Stephen R. Cefalo, and Melrose Associated Limited Partnership (**Melrose**) pursuant to

651323/2020   MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED       Page 1 of 11
Motion No. 012 013

1 of 11

[* 1]

which Melrose and Floral agreed to form Floral as a limited partnership for the purpose of acquiring and managing an apartment complex located in Melrose, Massachusetts.

Pursuant to Section 6(c) of LP Agreement, the parties agreed that monies received and expenses incurred in connection with the day-to-day business or operations of the Partnership were to be borne 96% by Melrose and 4% by Floral Associates Limited Partnership:

   c.  <u>Net Cash Receipts</u>.

       i.  For the purpose of this Agreement, the term "Net Cash Receipts" shall mean the net profit, if any, of the Partnership derived during any fiscal year or part thereof ***from the operations of the Project*** subsequent to the issuance of a temporary certificate of occupancy for the entire Project, ***after the payment of all expenses attributable to the Project***, including, without limitation, ***all management or other fees***, including fees payable pursuant to the Supervisory Management Services Inventive Agreement, payable to any Partner or their respective Affiliates, whether such fees are regular or supplemental, as ascertained through the use of generally accepted accounting principles, with all proper adjustments, consistently applied except that (A) depreciation of buildings, improvements and personalty owned by the Partnership shall not be deducted; (B) Mortgage Loan amortization and payments of principal of any other loan made to the Partnership, including Working Capital Loans, shall be deducted; (C) any depletions of reserves shall be added; and (D) amounts (other than reserves) expended or reserved for capital improvements, additions to the Project, reasonable working capital needs, replacement of equipment, fixtures and personalty, replacement reserves, sinking funds and reserves for contingent liabilities, all as determined by the Managing General Partner, and any amounts which any federal, state or local governmental agency having jurisdiction over the Project may require to be established as a reserve or accrual, shall be deducted.

      ii.  Net Cash Receipts, if any (less any amount paid pursuant to Article 23), shall be distributed as soon as practicable, as determined by the Managing General Partner in his sole discretion, after the end of the fiscal year of the Partnership. In no event shall Distributions of Net Cash Receipts be distributed in an amount in excess of that permitted under the Regulatory Agreement, applicable laws or applicable rules and regulations of HUD and/or MHFA. ***Distributions of Net Cash Receipts shall be allocated among the Partners in accordance with their respective Partnership Interests.***

**651323/2020  MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED**
**Motion No.  012 013**

Page 2 of 11

[* 2]

(NYSCEF Doc. No. 347, § 6[c] [emphasis added]).

This understanding is also reflected in the definition of Project which is defined as "the Property and Improvements, collectively," with these two terms in turn defined as the subject property and "all machinery, equipment, fixtures and personalty located or to be located on the Property or procured or to be procured for use in connection with the Property," respectively (*id.*, § 2).

On other hand, pursuant to Section 6(d) and (e) of the LP Agreement, the parties agreed that gains from capital events would be split on a 50%/50% basis:

d. <u>Allocations of Capital Transaction Gain or Loss</u>.

1. Income, gain or loss from a transaction which generates Sale Proceeds or Loan Proceeds shall constitute Capital Transaction Gain or Capital Transaction Loss, as the case may be.

2. Capital Transaction Loss shall be allocated among the Partners in accordance with their relative Partnership Interests.

3. Capital Transaction Gain shall be allocated in the following manner and priority (prior to any distribution of any Sale Proceeds or Loan Proceeds):

   a) Up to an amount equal to the aggregate negative Capital Amounts of all Partners having negative Capital Accounts shall be allocated to each such Partner in the same proportion as his negative Capital Account bears to such aggregate negative Capital Account;

   b) Up to an amount equal to the aggregate Capital Account Shortfalls of all Partners, after the allocation of gain under clause (a) above, shall be allocated to each Partner in the same proportion as his Capital Account Shortfall bears to such aggregate Capital Account Shortfalls of all partners;

   c) Any remaining Capital Transaction Gain shall be allocated 50% to the Limited Partner and 50%, in the aggregate, to the Original Limited Partner and the General Partners.

651323/2020  MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED
Motion No.  012 013

Page 3 of 11

e. <u>Distributions of Sale Proceeds and Loan Proceeds</u>. Upon the receipt of Sale Proceeds or Loan Proceeds, if the Partnership does not dissolve and terminate pursuant to Article 4, distributions of such proceeds, to the extent in the opinion of the Managing General Partner not required to pay any currently due obligation or liability of the Partnership not payable from current operating receipts or applied to the payment of any mortgage on the Project, repayment of which is not provided for in clauses (i) and (ii) hereof, shall be applied and distributed in the following order of priority:

i. First, subject to the approval of MHFA, to the repayment of any amounts loaned to the Partnership by any of the General Partners or their Affiliates pursuant to Paragraph c of Article 12 hereof;

ii. Second, subject to the approval of MHFA, to the repayment of any outstanding Working Capital Loans;

iii. Third, to the Limited Partner, in an amount up to the Unreturned Capital Contribution of the Limited Partner.

iv. Fourth, to the Development Company, in an amount equal to any outstanding Deferred Developer Fee.

v. Fifth, an amount up to the aggregate Unreturned Capital Contributions of the Original Limited Partner and the General Partners, to each such Partner in the same proportion as his Unreturned Capital Contribution bears to such aggregate Unreturned Capital Contributions.

vi. Sixth, to the extent of any remaining aggregate positive balance in the Partners' Capital Accounts after the foregoing distributions, to each such Partner having a positive Capital Account balance in the same proportion as the positive Capital Account of such Partner bears to the aggregate positive Capital Account balance of all Partners.

vii. Finally, the balance of any funds then remaining shall be distributed 50% to the Limited Partner and 50%, in the aggregate, to the Original Limited Partner and the General Partners.

(*id.*, § 6[d]-[e]).

Pursuant to Section 12(i), the parties further agreed that Floral could enter into agreements with Affiliates of the defendants provided that the amounts charged were "on terms reasonably competitive with those which may be obtained from unaffiliated persons" (*id*, § 12[i]).

651323/2020  MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED          Page 4 of 11
Motion No.  012 013

4 of 11

Pursuant to a certain Consulting Agreement (NYSCEF Doc. No. 313), dated January 2, 2018, by and between Floral and Floral Associates Development Company (**FADC**), an affiliate of the defendants, Floral retained FADC to assist in the sale of the building. Pursuant to the terms of the Consulting Agreement, and according to the defendants, the defendants earned 1% of the sales price in the way of a fee by negotiating a reduction of the brokerage commission from the sale (*i.e.*, a capital event and not from operations – from operations they received other fees) due from 4% to 2%. This expense is not an operating expense. It is an expense directly tied to and linked to the event of sale. Thus, it, like the brokerage commission, is not an expense or fee to be deducted from the operations of the Project in the definition of Net Cash Receipts (*i.e.*, "*from the operations of the Project… after the payment of all expenses attributable to the Project*, including, without limitation, *all management or other fees…*") (NYSCEF Doc. No. 347, § 6[c]). The phrase "including, without limitation" modifies the language coming before it, *i.e.*, the "expenses attributable to the Project" (*id.*). Put another way, were FADC's fee properly deducted in the definition of Net Cash Receipts, as defendants urge, brokerage commissions on sales would be included and deducted there as well. This clearly is not the business deal.

In its first cause of action Melrose argues that the defendants breached their fiduciary duties and the LP Agreement by failing to distribute on a 96%-4% basis some $1,006,260 in operating cash listed on a June 11, 2019 statement, prepared by CohnReznick to project the cash available to be distributed upon liquidation after the sale. Much of the difference of what was received by Melrose (some $503,130; *see* NYSCEF Doc. No. 9, ¶ 47) and this approximately $1 million figure is accounted for by the 1% fee received by FADC. In its second cause of action Melrose

651323/2020  MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED
Motion No. 012 013

Page 5 of 11

5 of 11

argues that the defendants breached their fiduciary duties by entering into the Consulting Agreement and by paying the defendants 1% of the sales price which they did not know prior to approving the sale and in its allocation on a 96%-4% basis. Melrose also argues that the defendants improperly deducted certain "Accrued Expenses" (this again relating to FADC's 1% fee) from operating cash (third cause of action), improperly retained some $98,000 that was due to be distributed at closing (fourth cause of action), improperly paid some $75,000 in bonuses using operating cash (fifth cause of action), failed to provide a post-sale accounting (sixth cause of action), and improperly used partnership funds to reimburse their legal fees (seventh cause of action).

In their opposition papers, the defendants argue that they were entitled to enter into the Consulting Agreement because the LP Agreement authorizes them to do so and as a Net Cash Receipt they were entitled to charge Melrose 96% of this expense. They further argue that the defendants cannot challenge the reasonableness of the fee because they do not have an expert witness and they have adduced the testimony of Melissa Chaput who indicates it is in fact reasonable (NYSCEF Doc. No. 328). The defendants further argue that part of the remaining cash comes from a 2014 refinancing and that some money was required to be held pursuant to certain HUD escrows. The defendants are only partially correct.

1. Melrose is entitled to summary judgment as to liability on its first and second causes of action. As discussed on the record and above, the defendants are not correct that the 1% Consulting Agreement fee is to be deducted in the definition of Net Cash Receipts as an operating expense and thus split on a 96%/4% basis. It is more properly understood as an

651323/2020  MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED                Page 6 of 11
Motion No.  012 013

6 of 11

expense in connection with the sale to be split 50%/50% as a reasonable affiliate transaction. Put another way, this was not an expense of the Project. As discussed on the record, like a brokerage commission, this was an expense in managing the capital event of sale. The defendants are correct however that affiliated transactions are authorized by Section 12(i) of LP Agreement and that the limitation is simply that amounts charged can't be more than that charged by a third party.

2. Inasmuch as discovery is complete and Melrose does not have an expert which creates an issue of fact as to whether the fee charged by FADC was reasonable, the defendants are entitled to summary judgment that the hiring of FADC was not a breach, nor was the fee charged. With respect to Melrose's claim that the defendants failed to distribute the cash at the end of the partnership, Melrose is entitled to summary judgment that the defendants breached their obligations under the LP Agreement. However, an issue of fact exists as to the amount which should have been distributed on a 50%/50% basis or as part of Net Cash Receipts because the record is not clear as to what portion if any is attributable to a 2014 refinancing. The cash in the account is presumptively operating cash. Cash is fungible and it will be incumbent on the defendants to establish what if any of the cash results from a prior capital event. For the avoidance of doubt, the escrows pursuant to any HUD refinancing is not a deduction from Net Cash Receipts **on sale** because **on sale** the escrows were released.

3. Melrose is also entitled to summary judgment with respect to liability as to its third cause of action for unjust enrichment only insofar as, as set forth above, any of the "Accrued

651323/2020   MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED                    Page 7 of 11
Motion No.  012 013

7 of 11

Expenses" listed on the June 11, 2019 statement (NYSCEF Doc. No. 345) deducted from the net cash from sale related to FADC's fee and were thus mischaracterized as an operating expense.

4. Melrose is also entitled to summary judgment as to liability as to its fourth cause of action alleging that the defendants failed to distribute certain sums of operating cash – *i.e.*, some $98,000. They are not however entitled to entry of judgment on damages. Although John McCullough indicated in his December 11, 2019 email (NYSCEF Doc. No. 365) that Floral anticipated making a $98,000 final distribution, it is unclear what if any amount was to derived from an earlier capital event (*i.e.*, the 2014 refinancing) such that the split would be 50%/50% and not 96%/4%. This email is prima facia evidence that the amounts in the account should be distributed as Net Cash Receipts, and the defendants shall bear the burden at trial of demonstrating otherwise.

5. Melrose is not entitled to summary judgment on their fifth cause of action, alleging that the defendants improperly paid some $75,000 in employee bonuses as an operating expense. The fully developed record indicates that these bonuses were awarded to employees for their years of service to Floral. This was not a sales or other capital event expense. It was within Floral's discretion to award such bonuses pursuant to Section 12 of the LP Agreement, and such performance bonuses are properly characterized as an operating expense attributable to the Project within the meaning of Section 6(c).

651323/2020   MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED
Motion No.  012 013

Page 8 of 11

8 of 11

[* 8]

6. Melrose is entitled to summary judgment as to their sixth cause of action for an accounting setting forth all distributions made pursuant to the sale of the subject property, and that properly accounts for FADC's fee as a capital expense related to the sale. Such accounting must also set forth which other sums derived from the 2014 refinancing or any other capital event, such that all funds may be properly characterized as either operating or capital expenses, and distributed accordingly. The defendants' expert report provided after fact discovery and which does not account for a full wind-up is insufficient, and does not moot this cause of action, as the defendants' contend.

7. Neither Melrose (seventh cause of action) nor the defendants (fifth counter-claim) are entitled to summary judgment seeking legal fees. There has been no finding as to whether the defendants committed willful misconduct, fraud, bad faith, or gross negligence as of yet. Section 21(b) of the LP Agreement provides for reimbursement of legal fees absent such finding.

8. Melrose otherwise simply fails to meet its burden of proof to demonstrate that dismissal of the defendants' counterclaims and affirmative defenses is warranted, except to the extent these counterclaims and affirmative defenses that are addressed above (*see* NYSCEF Doc. No. 368, at 20-21).

9. The defendants are entitled to summary judgment as to their first, second, third and fourth counterclaims, alleging breach of the implied covenant of good faith and fair dealing against Melrose, and violations of Mass Gen Laws Ann 93A against Melrose and ESMC

651323/2020 **MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED**
Motion No. 012 013

Page 9 of 11

9 of 11

based on Melrose's hold-up of the sale. The defendants have met their burden of showing that the $750,000 payment demanded by Melrose to close on the sale was a shakedown based on a misrepresentation, *i.e.*, that the payment was required to obtain the consent of the limited partners of Melrose, when in fact no consent was sought of the limited partners and in fact some $250,000 of that money was being diverted to ESMC. This was an unfair or deceptive tactic within the meaning of Mass Gen Laws Ann 93A (*Anthony's Pier Four, Inc. v HBC Assoc.*, 411 Mass 451, 475, 583 NE2d 806, 822 [1991]). Such misrepresentation also constitutes a breach of the covenant of good faith and fair dealing. Melrose fails to raise a triable issue of fact in opposition because Melrose's arguments of waiver and ratification have already been considered and rejected (*Melrose Assoc. Ltd. Partnership v Floral Assoc. Ltd. Partnership*, 212 AD3d 482, 483 [1st Dept 2023]). In addition, the Court notes that the record does not establish laches because the passage of time has not been so significant and in fact Melrose fails to allege any prejudice.

The Court has considered the parties' remaining arguments and found them unavailing.

Accordingly, it is hereby

ORDERED that Melrose's motion for summary judgment (Mtn. Seq. No. 013) is granted solely to the extent set forth herein; and it is further

ORDERED that the defendants' motion for summary judgment (Mtn. Seq. No. 012) is granted solely to the extent set forth herein; and it is further

651323/2020   MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED
Motion No.  012 013

Page 10 of 11

10 of 11

ORDERED that the parties shall appear for a pre-trial conference on June 14, 2024, at 11:30am.

20240604094547AB0RR0KC070C99F01FA4504B10C33B06115B28B

__6/4/2024__
DATE

ANDREW BORROK, J.S.C.

| | | | | |
|---|---|---|---|---|
| CHECK ONE: | ☐ CASE DISPOSED | | ☒ NON-FINAL DISPOSITION | |
| | ☐ GRANTED | ☐ DENIED | ☒ GRANTED IN PART | ☐ OTHER |
| APPLICATION: | ☐ SETTLE ORDER | | ☐ SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | ☐ INCLUDES TRANSFER/REASSIGN | | ☐ FIDUCIARY APPOINTMENT | ☐ REFERENCE |

651323/2020   MELROSE ASSOCIATES LIMITED vs. FLORAL ASSOCIATES LIMITED
Motion No.  012 013

Page 11 of 11

11 of 11